## IKE S. KNIGHT V. THE STATE.

### No. 1694.   Decided April 24, 1912.

**1.—Murder—Sentence—Eight Weeks—Statement of Facts.**

Where the term of court lasts longer than eight weeks, the time for filing statement of facts and bills of exception begins to run from the time the court pronounces sentence on the defendant, that being the final judgment, and where these were filed after ninety days of said sentence the same could not be considered on appeal.

**2.—Same—Term of District Court—Ninety Days Order.**

Where the term of the court lasted longer than eight weeks, and the court granted ninety days after the sentence within which to file statements of facts and bills of exception, an order granting ninety additional days is not authorized by law.

**3.—Same—Rule Stated—Time of Filing Statement of Facts.**

Where the term of court continues in session more than eight weeks, the time of filing statements of facts, etc., begins to run from the date of sentence, but where the term of the court is for less than eight weeks, such time for filing these papers begins to run at the date of adjournment.

**4.—Same—Practice on Appeal—Charge of Court.**

In the absence of a statement of facts, bills of exception to the testimony or objections to the charge of the court can not be considered on appeal, and it must be presumed that the trial court charged the law and all the law applicable to the evidence.

**5.—Same—Going Armed—Self-Defense.**

The fact that defendant carried his gun home with him would not impair his right of self-defense.

**6.—Same—Argument of Counsel.**

Prosecuting attorneys should always keep within the record and discuss the evidence and draw therefrom only legitimate deductions.

**7.—Same—Competent Witness—Divorce.**

That a State's witness had been divorced from her first husband on the ground of adultery was correctly excluded.

**8.—Same—Jury and Jury Law—Jury Commissioners.**

It is the policy of the law that jurors should be drawn by the jury commissioners and should not be selected by the sheriff or any officer.

**9.—Same—Misconduct of Jury.**

Where, upon trial of murder, it appeared from the record on appeal that facts were admitted before the jury which were not in evidence and which were injurious to the defendant, and that one of the jurors had formed and expressed an opinion that defendant ought to have his neck broke, a new trial should have been granted.

Appeal from the District Court of Tarrant.   Tried below before the Hon. W. T. Simmons.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Lattimore, Cummings, Doyle & Bouldin,* for appellant.—On question

of misconduct of jury: McWilliams v. State, 32 Texas Crim. Rep., 269; Mitchell v. State, 36 id., 278; Tate v. State, 38 id., 261; Holmes v. State, 38 id., 370; Washburn v. State, 31 id., 352; Hargrove v. State, 33 id., 431; Ellis v. State, 33 id., 508; Darter v. State, 39 id., 40; Aschicks v. State, 6 Texas Crim. App., 524; Wyers v. State, 13 id., 57.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was indicted, charged with murder. When tried he was convicted of manslaughter, and his punishment assessed at five years confinement in the penitentiary.

1. It appears by the record in this case that sentence was pronounced on defendant on January 27, 1911. It further appears that the term of court continued for more than eight weeks, and that under the provisions of the law relating to filing of statement of facts and bills of exception in courts where the term lasts longer than eight weeks, the time for filing such papers begins to run from the time the court pronounces sentence on a defendant, that being the final judgment. In this case the bills of exception were not filed until the sixth day of June, 1911, and the statement of facts was not filed until the 26th of May, 1911. In courts where the term lasts longer than eight weeks the court is powerless to grant more than ninety days in which to file such papers from and after the date of sentence; while in courts not extending beyond eight weeks they may grant ninety days from the date of adjournment of court, but can grant no more time in which to file statement of facts and bills of exception in the trial court. In this case there was an order granting ninety days, and then an order granting ninety days additional. This last order the court was without authority to grant. The bills of exception were not filed until one hundred and thirty days after the entry of sentence, and was not even filed within ninety days after the adjournment of that term of court. Attorneys will please remember that when a term of court continues in session more than eight weeks, the time begins to run from the date sentence is pronounced, that being the final judgment, while in courts whose terms are less than eight weeks, the time begins to run at the date of adjournment. The Legislature has made this distinction and we have no authority to disregard such regulations. Therefore, the statement of facts and bills of exception, not having been filed within the time fixed by law, can not be considered. In this condition of the record we can not consider the questions raised by the bills of exception, nor can we consider the assignments relating to the charge of the court, nor the refusal to give the special charges, for in the absence of a statement of facts we presume the court charged the law and all the law applicable to the evidence. However, while we can not consider the statement of facts, in passing on the case, yet we have read it, and as this case will be reversed on another ground, under

the evidence the defendant would have the right to go to the house, and would have the right to carry a gun with him, and these rights the court should fully protect in his charge, and the fact that he carries this gun home with him would not impair his right of self-defense if deceased just before or at the time the first shot was fired made a demonstration which, in the light of previous events, led defendant to believe that deceased was then and there about to kill him or do him serious bodily injury. On the other hand if deceased was not making a demonstration or doing an act which would lead defendant to believe his life was in danger, he would not have the right to kill him, even though deceased had wrongfully sought to obtain and retain possession of the premises.

2. And we would also say that prosecuting officers should always keep within the record, and discuss the evidence and draw only legitimate deductions therefrom. A number of the bills relate to exceptions to remarks of counsel, and some of the bills present remarks that should not have been made.

3. In view of another trial, we will say that the court did not err in excluding evidence that a State witness had been divorced from her first husband on the ground that she had been guilty of adultery.

4. As before stated, in making these general remarks, we are not undertaking to pass on the various assignments in detail, nor can we pass on the one relating to the drawing of the jury, but think it not improper to remark that it is the policy of our law that jurymen be drawn by commissioners and not selected by the sheriff or any officer; that the jury wheel law was passed that jurymen drawn on each and every case might be secured in a way that no person could control their selection, and it is the part of wisdom to follow the mandates of the law, and let jurymen be selected in a way therein provided. No course should be adopted or followed that would result in juries being otherwise selected.

5. The matter that presents reversible error is that one of the jurymen, Mr. C. H. Rowleter, on his examination qualified, stating he had no opinion in the case and did not know anything about the facts. One of the jurymen swears that while they were deliberating on the case, Mr. Rowleter stated he had attended a former trial of Ike S. Knight and any man that would go home and pour the money into the lap of such an old hag as that was ought to be hung. That it seemed funny to him that defendant did not know to whom this property belonged when he went to pay the taxes. That said juror also stated to the jury there present that defendant Ike S. Knight had shot a man by the name of Montgomery and Howell, that defendant had shot one of the man's legs off. Mr. Whitley testified that prior to being selected on the jury, this juror had stated, in conversation, while discussing this former trial: "If he had been on the jury he would have broke his darn neck," and stated that "any man who would live with the

parties that he was living with needed his neck broke." Mr. Riley also states that eleven of the jurors were for a low sentence, and the juryman Rowleter was for a higher sentence, and the sentence given defendant is the highest known to the law for the offense of which he was convicted. It is thus seen that facts were related by the jurymen that were not in evidence, the shooting of two other men, and other facts, and if the witnesses are to be believed, the juryman had heard the evidence on the former trial, and then had formed and expressed an opinion that defendant ought to have had his neck broke. In the record before us these facts are not disputed nor questioned, consequently we are of the opinion that defendant has not had a fair and impartial trial guaranteed to him under our laws. Guilty he may be— this fact we are not passing on, and without these remarks he perhaps would have been found guilty of the same offense of which he was convicted, but it is manifest he would not have received the same high penalty for this offense that he did receive if it had not been for the misconduct of this juryman and his preconceived opinion.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*